IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RILEY ERNEST HORN, et al.,<br><br>   Plaintiff,<br><br>v.<br><br>CHIEF OF POLICE THOMAS MANGER,<br>OFFICER RENEE MERRIMAN,<br><br>   Defendants. | Civil Action No.: PX-17-3633 |

**MEMORANDUM OPINION**

This case concerns alleged police misconduct arising in a state robbery case. ECF No. 33. Presently pending before the Court is a motion to dismiss the Second Amended Complaint filed by Defendants Chief of Police Thomas Manger ("Chief Manger") and Officer Renee Merriman ("Officer Merriman") of the Montgomery County Police Department ("MCPD").  ECF No. 49. Plaintiffs[1] also seek to amend the Second Amended Complaint, which Defendants oppose. ECF No. 63, 70, 76.  Plaintiffs Riley Horn and Toi Horn El separately oppose the motion to dismiss the Second Amended Complaint.  ECF No. 66.  The motions are ripe for review and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons that follow, Defendants' motion to dismiss the Second Amended Complaint is GRANTED and Plaintiffs' motion for leave to amend is DENIED.

---

[1] Plaintiffs are Riley Ernest Horn, Toi Horn, Royster Norwood, Jordan Grant, Paul Grant, Nicola Grant, Joshua Grant, Gabrielle Grant, Jonah Grant, Enid Grant, and Kayla Jenkins.  On June 30 and July 11, 2022, respectively, Toi Horn and Royster Norwood filed notices correcting their names for the record to Toi Horn El and Royster Norwood Bey.  ECF Nos. 59, 60.  The Clerk shall be directed to amend the docket to reflect their full and correct names.

I. **Background**

The Court accepts the Second Amended Complaint facts as true and most favorably to the Plaintiffs. On May 25, 2017, Plaintiffs Riley Horn and Jordan Grant attended a party in Gaithersburg, Maryland. ECF No. 33 ¶ 19. The gathering broke up soon after their arrival because someone at the party had been robbed. *Id.* ¶ 20. Horn and Grant left the party by car, and officers executed a traffic stop to question them about the robbery. Both men denied any involvement in the offense and officers allowed them to leave. *Id.* ¶ 21.

Sometime in August of that year, MCPD Officer Merriman obtained an arrest warrant for Horn and Grant. Plaintiffs now contend, without factual support, that the warrant had been based on "falsified information and lies." ECF No. 33 ¶ 22. When officers executed the arrest warrant as to Jordan Grant, they questioned him regarding Riley Horn's whereabouts. *Id.* ¶ 23. Defendants ultimately discovered that Riley Horn was living in Detroit, Michigan. *Id.* at ¶ 26.

The following month, Officer Merriman obtained no-knock warrants to search two homes in which Plaintiffs had resided. ECF No. 33 ¶¶ 27-28. In executing the warrants, officers stormed the homes in tactical riot gear and with guns drawn, broke in the doors with battering rams, and "trashed" both homes. *Id.* ¶¶ 29, 32. In the home occupied by Plaintiffs Toi Horn El, Riley Horn, and Royster Norwood Bey, officers damaged the residence and would not allow Toi Horn El to dress. *Id.* at ¶¶ 33, 34. In the other home occupied by the Grant Plaintiffs and Plaintiff Kayla Jenkins, the officers damaged the doors, locks, door frames, safe, and bedroom furniture. *Id.* at ¶ 35. Officers also seized "legally held handguns" from the residences. *Id.* at ¶¶ 35, 37. Again without factual support, the Second Amended Complaint characterizes the warrants as pretextual and fraudulently made. *Id.* at ¶ 37.

On September 19, 2017, Riley Horn was arrested in Michigan and extradited to Maryland. ECF No. 33 ¶ 38. Horn now claims the extradition had been effectuated without proper documentation, and that he was held at Montgomery County Detention Center without lawful authority. *Id.* ¶¶ 39, 40. Horn remained in pretrial detention for roughly 260 days until the robbery charges were dismissed against him and Jordan Grant. *Id.* ¶¶ 42, 46.

From this series of events, the Second Amended Complaint alleges seven claims against Defendants, namely violations of Plaintiffs' Fourth and Fourteenth Amendment rights, brought pursuant to 42 U.S.C. § 1983, stemming from the arrest, search, and detention of Plaintiffs (Counts I-III and Count VII); as well as companion state common law claims for malicious prosecution, harassment, and fraud (Counts IV-VI). ECF No. 33 at pp. 8-17. Plaintiffs seek monetary damages, declaratory judgment and injunctive relief. *Id.* at 17.

With this background in mind, the Court turns first to Defendants' motion to dismiss.

## II.    Defendants' Motion to Dismiss

Defendants lodge a series of challenges to the Second Amended Complaint. The Court focuses on the sufficiency of the claims as pleaded. For the reasons discussed below, the Second Amended Complaint fails to make plausible any of the claims.

### A. Standard of Review

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. To survive dismissal, the plaintiffs must aver sufficient facts that "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Although "a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim, … the complaint must allege sufficient facts to establish those elements."

3

*Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). The Court may consider documents attached to the complaint or the motion to dismiss if they are integral to the allegations and their authenticity is not disputed. *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). The Court may also take judicial notice of documents from related state court proceedings and other matters of public record without converting the motion into one for summary judgment. *Philips*, 572 F.3d at 180 (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)); *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *see also* Fed. R. Evid. 201 (Judicial Notice of Adjudicative Facts).

### B. Analysis

The Court first addresses whether the Second Amended Complaint avers sufficient facts to make plausible the federal constitutional claims (Counts I-III and VII). The first three counts challenge the constitutionality of Horn and Grant's arrests and the execution of the related search warrants. Read most charitably, the claims assert violations of Plaintiffs' right to be free from unconstitutional searches and seizures as protected by the Fourth Amendment to the United States Constitution. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation.").[2]

---

[2] Although the Second Amended Complaint also references a violation of Plaintiffs' Fourteenth Amendment rights, the allegations implicate solely the Fourth Amendment.

Beginning with the arrests, Jordan Grant and Riley Horn maintain essentially that their arrest was based on falsified information.  A § 1983 false arrest claim shall not proceed unless the complaint facts make plausible that the arrest lacked probable cause.  *See Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *Street v. Surdyka*, 492 F.2d 368, 372-73 (4th Cir. 1974).  Probable cause exists if "at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."  *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *accord Santos v. Frederick Ctny. Bd. of Comm'rs*, 725 F.3d 451, 466 (4th Cir. 2013); *see also Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017).  Probable cause must be based on the totality of the circumstances.  *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *Munday*, 848 F.3d at 253; *United States v. Garcia*, 848 F.2d 58, 59-60 (4th Cir. 1988).

The Second Amended Complaint supplies no facts showing the arrests lacked probable cause.  Instead, the Second Amended Complaint merely avers, in conclusory fashion, that Defendants obtained arrest warrants based on "false" information, but provides no detail as to what in the warrant had been false.  Without more, the naked assertion that Plaintiffs' arrest had been based on false accusations must fail.

Plaintiffs' challenges to the search warrants advance the same "false information" theory.  "When an officer improperly obtains a search warrant using deceptive falsities or omissions and uses that ill-gotten warrant to search and seize property, the Fourth Amendment's right to be free from unreasonable searches and seizures is violated."  *Smith v. Travelpiece*, 31 F.4th 878, 884 (4th Cir. 2022) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *United States v. Colkley*, 899 F.2d 297, 302 (4th Cir. 1990)).  But again, the Second Amended Complaint provides no facts which make plausible that the search warrants were supported by false information.  Without more, the Second Amended Complaint lacks sufficient factual support to state a colorable claim for relief under the Fourth Amendment.

The Second Amended Complaint also avers that Defendant Manger failed to adequately supervise or train officers on executing valid arrests and searches. ECF No. 33 at ¶¶ 106-09. Plaintiffs broadly allege that the "unconstitutional policies, customs and practices of Montgomery County" were at the root of Plaintiffs' constitutional harms. *Id.* at ¶ 110. In pursuing a municipal liability claim, a plaintiff must make plausible that the supposed constitutional violations arose on account of an unconstitutional policy, custom, or practice of the municipality. *See Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 691, 694 (1978). The Second Amended Complaint, most charitably read, pleads no facts that make plausible the existence of any such department or county policy, custom, or practice. The averred facts are silent in that respect, and mere conclusory references to "MCPD's policy and oversight" is not enough. *See* ECF No. 33 at ¶¶ 108, 109. Thus, the municipal liability claim fails as a matter of law.

Finally, to the extent that Plaintiffs intend to bring a claim against Defendant Manger for his own supervisory liability, that claim also fails. Liability under § 1983 attaches when an individual defendant's acts or omissions bring about the alleged constitutional violations. The doctrine of respondeat superior, by contrast, does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Rather, supervisory liability under § 1983 is made plausible only with facts averring that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct posing a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury the plaintiff had suffered. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The Second Amended Complaint alleges

no facts to support this claim. Accordingly, any such claim must be dismissed as to against Defendant Manger.

The Court turns next to the state common law claims (Counts IV-VI). The Second Amended Complaint fronts these claims as arising from the same course of events related to the constitutional challenges. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966). The Court thus declines to exercise supplemental jurisdiction over the state law claims. They are dismissed without prejudice.

### III.     Plaintiffs' Motion to Amend the Second Amended Complaint

Plaintiffs ask to file yet a third amended complaint to address the deficiencies raised in Defendants' Motion to Dismiss. ECF No. 63-1 at 1. Plaintiffs argue that the Court should permit amendment because the prior amendments had been Court-ordered and because Defendants have not yet filed an answer. *Id.* at 2.

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend its pleading "once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Defendants filed their motion to dismiss on May 9, 2022. Plaintiffs did not file an amended pleading within 21 days. Accordingly, they must obtain leave of Court to do so now. *See* Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.").

Rule 15 dictates that "[t]he court should freely give leave when justice so requires." *Id*. But where the proposed amendment is futile, the Court may deny such leave to amend. Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.* 637 F.3d 462, 471 (4th Cir. 2011) (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008)).

Because the proposed third amended complaint still fails to state a federal constitutional claim, allowing the amendment would be futile. Plaintiffs seek to add Montgomery County, Maryland ("the County") as a defendant, alleging generally that the County failed to adequately train its officers on proper "investigation and arrest procedures and that the County improperly uses no-knock warrants." ECF No. 63-3 ¶¶ 130-31. Additionally, the proposed pleading summarily asserts that the County engages a "widespread pattern and practice" of unconstitutional execution of no-knock warrants arising from failures in training, and thus reflect a wholesale adoption of an unconstitutional no-knock procedure. *Id.* at ¶ 135. Again, as in the Second Amended Complaint, the allegations are conclusory and devoid of factual basis. Therefore, the proposed amendment would be futile in stating a municipal liability claim against the County.

Next, as to the false arrest and search claims, the proposed amendments are also futile. Regarding Grant's arrest, the amendment merely adds that the robbery suspects were "tall" where Grant is "short;" and that Officer Merriman refused to talk to Grant's father, Paul Grant, about the investigation. ECF No. 63-3 ¶¶ 20, 24, 26. As to Riley Horn, the proposed amendment now claims that Defendants did not properly apply for a Michigan arrest warrant or seek his extradition, and that Horn's pretrial detention was unlawful as a result. *Id.* ¶¶ 64, 72, 73.

These allegations are insufficient. The discrepant height information alone does not make plausible that the arrest lacked probable cause. Nor does the proposed amendment offer any facts to make plausible that Horn's arrest in, and extradition from, Michigan was constitutionally infirm. Merely saying as much does not make it so. Thus, the proposed amendment as to the false arrest claims is futile.

On the search warrant claims, the relevant proposed amendments add that the warrant had been executed after midnight; the Grant Plaintiffs believed their home was being burglarized; that officers had confronted the Plaintiffs with guns drawn and "ushered" them to the kitchen; that Paul Grant remained handcuffed for hours during the search; that all details regarding the homes and their occupants were omitted from the affidavit supporting the search; and that the affidavit did not describe the weapon used in the robbery. ECF No. 63-3 at ¶¶ 35, 42,132-134.

Again, the proposed amendment does not make the Fourth Amendment challenge plausible. It is axiomatic that a search warrant affidavit need not include "all the details" of why the places to be searched more probably than not will contain evidence of a crime. *See, e.g., United States v. Cobb*, 970 F.3d 319, 327 (4th Cir. 2020). By extension, the mere averment that a search warrant affidavit omitted certain facts, by itself, does not plausibly support that the omission defeats probable cause or misled the judicial officer who authorized the search. Particularly as to the supposed omitted description of the firearm, or investigative conversations regarding "ownership" of weapons, nothing in the amendment explains how these omissions are false or misleading.[3] Thus, as to these claims, the amendments are futile.

---

[3] Notably, the actual affidavit in support of the search warrant includes a robust summary as to the details of the armed robbery and facts suggesting that the firearms used in the crime may be found in the target residences. The affidavit describes that all suspected robbers, including Grant and Horn, "had guns" and were "known to carry guns;" that Grant had been seen placing a gun in his gym bag shortly before the robbery; and that Grant had told one of his confederates that he had been briefly "kicked out" of his house by his father who had found the firearm in the residence. ECF No. 70-4 at 5. Although the Court does not rely on the affidavit for its futility analysis, the affidavit can hardly

Last, the proposed amendments now seem to challenge the length of Paul Grant's detention during the search warrant execution. This is a legal nonstarter. Officers may detain an individual incident to a search absent particularized suspicion that the individual is involved in criminal activity or poses a danger. *Bailey v. United States*, 568 U.S. 186, 193 (2013) (citing *Michigan v. Summer*, 452 U.S. 692, 705) (1981) and *Muehler v. Mena*, 544 U.S. 93, 125 (2005)). That Paul Grant had been detained for the duration of the search alone does not state a viable Fourth Amendment claim.

In short, viewing all factual allegations included in the proposed third amended complaint as true and most favorably to Plaintiffs, the amendments are nonetheless futile. Thus, the motion to amend will be denied. Moreover, because Plaintiffs have been given two prior opportunities to amend their complaint, and the Court has considered the sufficiency of yet a third proposed amendment, the Court exercises its discretion to dismiss the claims with prejudice. *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825-26 (D. Md. 2013) (citing *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638-39 (D. Md. 2009).

## IV.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED and Plaintiffs' Motion for Leave to Amend the Second Amended Complaint is DENIED. A separate Order follows.

| | |
|---|---|
| 1/23/23 | /S/ |
| Date | Paula Xinis<br>United States District Judge |

---

be described as failing to offer sufficient specificity that firearms used in the offense would be found in the places to be searched.